UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MYL LITIGATION RECOVERY I LLC,
                            Plaintiff,

                -v-                                      19-CV-1799 (JPO)

MYL AN N.V., *et al.*,                                   OPINION AND ORDER
                            Defendants.

---

J. PAUL OETKEN, District Judge:

Plaintiff MYL Litigation Recovery I LLC ("MLR"), the assignee of certain investment

funds that purchased the common stock of Mylan N.V.,[1] brings this action against Defendants

Mylan N.V., Mylan Inc., Heather Bresch, Paul B. Campbell, Rajiv Malik, Kenneth S. Parks, and

John D. Sheehan (collectively, "Mylan") under Sections 10(b), 18, and 20(a) of the Securities

and Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j(b), 78r, 78t(a), and Rule 10b-5

promulgated thereunder, 17 C.F.R. § 240.10b-5. Mylan now moves to partially dismiss the

complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the

motion is granted in part and denied in part.

## I.      Background

### A.      Procedural Background

On March 20, 2017, the Lead Plaintiffs in *In re Mylan N.V. Securities Litigation*, No. 16

Civ. 7926 (the "Class Action") filed a post-consolidation Amended Class Action Complaint

---

[1] Greenlight APE, LLC is the manager of MYL Litigation Recovery I LLC. (Dkt. No. 1
("Compl.") ¶ 15.) Greenlight Capital, LP, Greenlight Capital Qualified, LP, Greenlight Capital
Investors, LP, Greenlight Capital Offshore Partners, Greenlight Capital Offshore Master, Ltd.,
and Solasglas Investments, LP have all assigned their claims to MYL Litigation Recovery I LLC.
(Compl. ¶¶ 18–23.)

asserting claims under: (1) Section 10(b) of the Exchange Act and Rule 10b-5, (2) Section 20(a) of the Exchange Act, and (3) Section 1 of the Israeli Securities Law of 1968. (Class Action Dkt. No. 39.) Mylan moved to dismiss (Class Action Dkt. No. 45), and on March 28, 2018, this Court granted the motion in part. *See In re Mylan N.V. Sec. Litig.*, No. 16 Civ. 7926, 2018 WL 1595985 (S.D.N.Y. Mar. 28, 2018).

On July 6, 2018, the Lead Plaintiffs filed a Second Amended Class Action complaint asserting claims under: (1) Section 10(b) of the Exchange Act and Rule 10b-5 and (2) Section 20(a) of the Exchange Act. (Class Action Dkt. No. 89.) Mylan again moved to dismiss (Class Action Dkt. No. 95), and on March 29, 2019, this Court granted the motion in part. *See In re Mylan N.V. Sec. Litig.*, 379 F. Supp. 3d 198 (S.D.N.Y. 2019).

MLR initiated this related action on February 26, 2019. (*See* Compl.) It has chosen to opt out of the Class Action and pursue its own claims. The allegations in the instant complaint focus solely on the alleged EpiPen fraud and exclude the alleged generic drug pricing fraud that forms part of the basis of the Plaintiffs' claims in the Class Action. (*See* Compl.; *see also* Dkt. No. 34 at 1.) This complaint also adds allegations regarding an additional misstatement based on Mylan's lack of effective disclosure controls to support a claim under Section 18, as well as under Sections 10(b) and 20(a) of the Exchange Act. (*Id.*) All other EpiPen misstatements are also alleged to support a claim under Section 18, as well as under Sections 10(b) and 20(a). (*Id.*)

On June 3, 2019, this Court approved a Stipulation and Order in which the parties agreed that this Court's rulings in the Class Action would apply to this case, and that Mylan would not re-raise arguments in this case that this Court already rejected in the Class Action. (Dkt. No. 29.)

On June 5, 2019, Mylan moved to partially dismiss the complaint. (Dkt. No. 30.) The motion is now fully briefed and ready for this Court's consideration.

### B.     Factual Background

The Court assumes familiarity with the factual background of this case, as set forth in this Court's prior opinions in the Class Action. *In re Mylan N.V. Sec. Litig.*, 379 F. Supp. 3d 198; *In re Mylan N.V. Sec. Litig.*, 2018 WL 1595985. Because the Class Action and this case rest on the same factual basis, this section will be limited to setting forth MLR's additional allegations that Mylan made a material misstatement regarding the effectiveness of Mylan's disclosure controls. The factual allegations in the complaint are assumed true for the purposes of this motion.

As part of its disclosure obligations, Mylan repeatedly certified that it had established effective disclosure protocols and procedures. (Compl. ¶ 170.) For example, in its 2013 Annual Report, Mylan disclosed:

> An evaluation was performed under the supervision and with the participation of [Mylan's] management, including the Principal Executive Officer and the Principal Financial Officer, of the effectiveness of the design and operation of [Mylan's] disclosure protocols and procedures as of December 31, 2013. Based upon that evaluation, the Principal Executive Officer and the Principal Financial Officer concluded that [Mylan's] disclosure controls and protocols were effective.

(Compl. ¶ 171 (emphasis omitted).)  Similar statements were made in Mylan's quarterly and annual reports from 2014 to 2016.  (Compl. ¶ 172.)  Further, in Mylan's 2013 Annual Report, Defendants Heather Bresch and John Sheehan certified, pursuant to Section 302 of the Sarbanes-Oxley Act of 2002 ("SOX"), that Mylan had established effective disclosure controls and procedures.  (Compl. ¶ 173.)  Similar certifications were made in Mylan's quarterly and annual reports from 2014 to 2016.  (Compl. ¶¶ 174–176.)

MLR describes Mylan's disclosure controls as in reality "woefully deficient to assure that [Mylan] could not mislead investors about the misclassification of the EpiPen and Mylan's anticompetitive conduct with respect to the EpiPen." (Compl. ¶ 178.)  MLR alleges that the

inadequacy of the controls is evinced by Mylan's entry into a Control Integrity Agreement ("CIA") with the Office of Inspector General for the Department of Health and Human Services at the end of 2016 as part of Mylan's settlement with the Department of Justice due to Mylan's misclassification of the EpiPen. (Compl. ¶¶ 7, 125, 179, 181.) As part of the CIA, Mylan had to make several improvements to its Corporate Compliance Program and implement new reporting requirements. (Compl. ¶¶ 126, 180.) MLR asserts that the fact that the Mylan had to undertake these improvements "demonstrates the falsity of [Mylan's] prior certifications concerning the purported effectiveness of Mylan's disclosure controls and procedures." (Compl. ¶ 127.)

MLR further alleges that Defendants Bresch, Campbell, Malik, Parks, and Sheehan knew of, or recklessly disregarded, Mylan's ineffective disclosure protocols. (Compl. ¶ 194.) The maintenance of the disclosure protocols was the responsibility of the individual defendants as senior executives. (*Id.*) And Defendants Bresch, Campbell, Parks, and Sheehan all attested that they had designed (or caused to be designed under supervision) Mylan's disclosure protocols and procedures and evaluated the effectiveness of those procedures. (*Id.*)

MLR's members actually relied on those representations when it purchased Mylan's stock. (Compl. ¶¶ 201–202.) When Mylan's misclassification and alleged anticompetitive conduct regarding the EpiPen became known to the market, the stock price dropped and caused MLR's members to suffer economic losses. (Compl. ¶¶ 203–204.)

## II.   Legal Standard

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 128 (2d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

The Court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor." *Allaire Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006) (quoting *Scutti Enters., LLC v. Park Place Entm't Corp.*, 322 F.3d 211, 214 (2d Cir. 2003)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

"Securities fraud claims are [also] subject to the heightened pleading standards established by Federal Rule of Civil Procedure 9(b) and the [Private Securities Litigation Reform Act ("PSLRA")], 15 U.S.C. § 78u-4." *Shanawaz v. Intellipharmaceutics Int'l Inc.*, 348 F. Supp. 3d 313, 322 (S.D.N.Y. 2018). Where a claim alleges "fraud or mistake," Rule 9(b) provides that "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The PSLRA requires a claim for securities fraud to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1)(B).

## III. Discussion

### A. Section 10(b) and 20(a) Claims

MLR first asserts securities fraud claims under Section 10(b) and Rule 10b-5(b) against Mylan for "mak[ing] any untrue statement of a material fact or . . . omit[ting] to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading . . . in connection with the purchase or sale of any security." 17

C.F.R. § 240.10b-5.  "To state a claim under these provisions, a plaintiff must show '(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.'" *Menaldi v. Och-Ziff Capital Mgmt. Grp. LLC*, 164 F. Supp. 3d 568, 576 (S.D.N.Y. 2016) (quoting *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 157 (2008)).  Relatedly, Section 20(a) of the Exchange Act imposes liability on "[e]very person who, directly or indirectly, controls any person liable" for securities fraud.  15 U.S.C. § 78t(a).  "As a general rule, there can be no control person liability without a 'primary violation' of the Exchange Act."  *Menaldi*, 164 F. Supp. 3d at 577 (quoting *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 139 (2d Cir. 2011)).

### 1.    Rebate Statements

First, Mylan moves to dismiss MLR's claims that Mylan's statements that its Medicaid Drug Rebate Program ("MDRP") rebate calculations carried "risk of errors" were misleading.  (*See* Compl. ¶¶ 156–160.)  MLR alleges that these statements were misleading because Mylan implied that its rebate calculations could be correct without disclosing that Mylan was in fact deliberately misclassifying the EpiPen as a generic drug.  (Compl. ¶ 159.)[2]  Mylan argues that MLR has not adequately pleaded either that those statements were in fact misleading or the necessary scienter to support its allegations.  (Dkt. No. 31 at 9–12.)  As this Court discussed in connection with the Class Action, to adequately state a claim for the violation of the securities

---

[2] MLR filed a "Letter Regarding Supplemental Authority" on October 9, 2019, that cited no new legal authority, but instead attempted apprise this Court of additional facts alleged in a complaint that the SEC filed in another district court.  (Dkt. No. 37.)  Because courts generally may not "look beyond facts stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken," the Court declines to consider MLR's submission.  *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (alterations in original) (citation and internal quotation marks omitted).

laws for these statements, MLR "must adequately plead that (1) the EpiPen was, in fact, misclassified, (2) that Mylan knew EpiPen was misclassified, and (3) that Mylan acted with the requisite scienter in misleading investors about Mylan's knowledge of the misclassification." *In re Mylan N.V. Sec. Litig.*, 2018 WL 1595985, at *13. Indeed, "if Mylan knew for certain that the EpiPen was misclassified, then warning about the 'risk of errors' could have [misled] a reasonable investor." *Id.* at *10. In the Class Action, this Court found that the plaintiffs had "clear[ed] these high hurdles," and the allegations survived. *Id.* at *13.

Mylan now argues that an intervening statute, the Right Rebate Act ("RRA"), Pub. L. No. 116-16, § 6, 133 Stat. 852, 859 (2019), demonstrates that the MDRP was ambiguous at the time that Mylan made the "risk of error" statements at issue. Specifically, Mylan argues that the RRA "resolv[ed] the ambiguity in the MDRP by replacing the term 'original new drug application' in the statute with 'new drug application.'" (Dkt. No. 31 at 11.) Because of this "[c]ongressionally recognized" ambiguity, Mylan first argues that MLR has not properly pleaded that Mylan knew for certain that the EpiPen was misclassified. (*Id.*) In particular, Mylan points to a document in which the Centers for Medicare & Medicaid Services ("CMS") recognized that the term "original" "created ambiguity." Centers for Medicare & Medicaid Services, Fiscal Year 2016 Justification of Estimates for Appropriations Committees 159, https://www.cms.gov/About-CMS/Agency-Information/PerformanceBudget/Downloads/FY2016-CJ-Final.pdf; (*see* Dkt. No. 31 at 5 & n.5, 11).[3] Even if this Court finds that Mylan's statements were misleading or false, Mylan posits, MLR cannot plead the requisite scienter

---

[3] This document is properly considered on a motion to dismiss as a public document that formulates part of the RRA's legislative history. *See Ass'n of Home Appliance Mfrs. v. City of N.Y.*, 36 F. Supp. 3d 366, 371 (S.D.N.Y. 2014) ("Judicial notice may be taken of material that is a matter of public record . . . , such as legislative history.")

needed to sustain its claims because the ambiguity of the statute makes the inference of "a mental state embracing intent to deceive, manipulate, or defraud" not "at least as compelling as any opposing inference of nonfraudulent intent." (Dkt. No. 31 at 11–12 (internal quotation marks omitted) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314, 319 (2007)).)

Both of these arguments are unavailing. The RRA was passed for the express purpose of preventing Mylan from misclassifying the EpiPen and other drugs by "[c]los[ing] the loophole that Mylan, and others, exploited by providing [enforcement] authority to the Secretary of HHS." Senate Finance Committee, The Right Rebate Act of 2019, https://www.finance.senate.gov/imo/media/doc/Right%20Rebate%20Act%20of%202019%20One-pager.pdf.[4] It beggars belief that Mylan would be able to hide behind the RRA in order to defeat MLR's allegations regarding the "risk of error" statements — statements that have already survived a motion to dismiss in one of this Court's prior opinions in the Class Action. *See In re Mylan N.V. Sec. Litig.*, 2018 WL 1595985, at *8–10, 12–13. And the notion that the deletion of the word "original" constitutes congressional recognition of inherent ambiguity in the statute is unpersuasive in terms of negating either the misleading nature of the statement or scienter. MLR, like the Class Action Plaintiffs, pleads that CMS explicitly told Mylan on multiple occasions that EpiPen was misclassified. (Compl. ¶¶ 105, 135); *see In re Mylan N.V. Sec. Litig.*, 2018 WL 1595985, at *13 ("The most important of [the evidence of scienter] is the allegation that CMS 'repeatedly informed Mylan that Mylan was misclassifying the EpiPen for purposes of the MDRP.'" (citation omitted).) The deletion of a single word from the statute that may or may

---

[4] This document is properly considered on a Motion to Dismiss as a public document that formulates part of the RRA's legislative history. *See Ass'n of Home Appliance Mfrs.*, 36 F. Supp. 3d at 371.

not have clarified some ambiguity is largely irrelevant if the CMS did indeed directly and repeatedly inform Mylan that the EpiPen was misclassified.

In short, the RRA does not diminish the plausibility of the allegations that (1) Mylan knew the EpiPen was misclassified or (2) Mylan acted with requisite scienter when the statements were made — the inference of "a mental state embracing intent to deceive, manipulate, or defraud" is to such a level that it is not "at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc.*, 551 U.S. at 314, 319 (citation omitted). Accordingly, MLR's Section 10(b) and 20(a) claims on the basis of Mylan's statements that Mylan's MDRP rebate calculations carried "risk of errors" survive.[5]

### 2.    Anticompetitive Conduct

Second, Mylan moves to dismiss MLR's claims of anticompetitive conduct on the basis that the allegations in the complaint are too conclusory. In its complaint, MLR simply alleges the following: Mylan controlled more than 90% of the market share, which allowed it to increase the price of the EpiPen. (Compl. ¶ 109.) To retain that market share, it offered higher rebates and discounts to pharmacy benefit managers ("PBMs") in return for exclusive or preferred placement of the EpiPen on the PBM's formularies. (Compl. ¶ 110.)[6] In 2013, Mylan took steps to shut out a potential competitor to the EpiPen, called Auvi-Q, through these rebates.

---

[5] Mylan has also moved to dismiss MLR's Section 10(b) and 20(a) claims based on Mylan's statements explaining its sources of income on the basis that MLR has not properly alleged that Mylan knowingly misclassified the EpiPen or that it engaged in anticompetitive conduct. (Dkt. No. 31 at 18.) Because MLR's misclassification claims survive, so too do its claims regarding Mylan's statements of income. *See In re Mylan N.V. Sec. Litig.*, 2018 WL 1595985, at *6 ("Mylan's Forms 8-K squarely put its sources of income at issue. For example, attributing EpiPen's strength to 'favorable pricing and volume' . . . may have been misleading in the absence of an additional statement disclosing that the EpiPen's strength was *also* due to anticompetitive agreements and knowingly miscalculated Medicaid rebates.").

[6] This is significant because "[i]f a drug is not included on the formulary, it is not covered by insurance, and will likely be too expensive for a patient to purchase." (Compl. ¶ 53.)

(Compl. ¶ 112.)  Mylan increased the rebates offered to PBMs to historically high levels and increased the price of the EpiPen to cover the cost.  (*Id.*)  Because Sanofi, the company that owned Auvi-Q, did not have a large enough market share to offer comparable discounts, Mylan was able to block Sanofi from accessing a large portion of the epinephrine auto-injector market.  (Compl. ¶¶ 113–114.)

These allegations are insufficient to survive Mylan's motion to dismiss.  As this Court stated in its second opinion in the Class Action, "to overcome the presumptive legality of exclusive-dealing agreements, plaintiffs must adequately allege an actual adverse effect on competition as a whole in the relevant market, and that the arrangements' anticompetitive effects outweigh [their] procompetitive effects."  *In re Mylan N.V. Sec. Litig.*, 379 F. Supp. 3d at 208 (citations and internal quotation marks omitted).  And the PSLRA requires that "if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u–4(b)(1).

It is that requisite particularity which is currently missing from MLR's complaint.  In the Class Action, this Court determined that

> Plaintiffs allege[d] with *particularity* that the EpiPen rebate scheme blocked Sanofi from accessing a significant portion of the market for epinephrine autoinjectors.  And Plaintiffs also adequately allege[d] that, despite the rebates offered, the ultimate price of EpiPen actually rose as a result of the rebate scheme, resulting in net anticompetitive effects.

*In re Mylan N.V. Sec. Litig.*, 379 F. Supp. 3d at 208 (emphasis added) (citation omitted).  It is beyond dispute that MLR's allegations are more threadbare than those in the Class Action complaint considered by this Court.  (*Compare* Compl. ¶¶ 108–114, *with* Class Action Dkt. No. 89 ¶¶ 100, 105–112.)  MLR's allegations here are so conclusory that they do not meet the standard that those in the Class Action complaint cleared.  And because MLR's allegations fall

below a minimum standard to adequately plead that Mylan engaged in anticompetitive conduct, MLR has not pleaded the requisite scienter. *See In re Mylan N.V. Sec. Litig.*, 2018 WL 1595985, at *15 ("Plaintiffs' sparse allegations of illegality cannot give rise to a strong inference that Mylan was reckless in its failure to disclose [its allegedly anticompetitive conduct].").

Accordingly, MLR's Section 10(b) and 20(a) claims based on Mylan's allegedly anticompetitive conduct are dismissed.

### 3.        Statements Regarding Effective Disclosure Protocols

Mylan argues that MLR has not properly alleged that Mylan's certifications that it had effective disclosure protocols were misleading, because the only link pointed to in the complaint was the fact that Mylan entered into a Control Integrity Agreement ("CIA"). (*See* Dkt. No. 31 at 15–16.) Mylan argues that the CIA did not concern its SEC disclosure procedures — instead, the CIA was intended to improve its compliance procedures for federal healthcare programs. (Dkt. No. 31 at 15.) Further, Mylan asserts, even if the CIA did better its SEC disclosure procedures, mere improvement of SEC disclosure procedures is insufficient to demonstrate that its procedures were deficient prior to the CIA. (Dkt. No. 31 at 16.) And MLR has alleged no other facts supporting the notion that Mylan's disclosure protocols are deficient aside from the CIA. (*Id.*)

This Court agrees that MLR has not met its burden of properly alleging that Mylan's statements certifying the efficacy of its disclosure protocols and procedures were misleading. It is clear from the face of the CIA that it is intended "to promote compliance with the statutes, regulations, and written directives of Medicare, Medicaid, and all other Federal health care

programs." (Dkt. No. 32-4 at 1.)[7]  While it is true, as MLR asserts, that SEC disclosure protocols and health care compliance regimes are not mutually exclusive (*see* Dkt. No. 34 at 24), it is MLR's burden to adequately allege a link between the CIA and Mylan's disclosure protocols.  It has not done so.

Other than the CIA, MLR alleges only that Mylan's disclosure protocols were "woefully deficient to assure that [Mylan] could not mislead investors about the misclassification of the EpiPen and Mylan's anticompetitive conduct with respect to the EpiPen." (Compl. ¶ 178.) There is a litany of cases supporting the principle that the conclusory allegation that wrongdoing was allowed to take place is not enough to sustain a claim that a defendant company's disclosure protocols were deficient.  *See, e.g.*, *In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 648 (S.D.N.Y. 2017) (noting that disclosure control certifications are not misleading by virtue of misconduct where they "do not purport to guarantee that [the] controls will perform perfectly in every instance" but instead "speak to reasonable assurance or reasonable certainty" (citation and internal quotation marks omitted)).  Because MLR has not specifically alleged *how* the disclosure protocols were inadequate, its claims must be dismissed.  *See Rex & Roberta Ling Living Trust u/a December 6, 1990 v. B Commc'ns Ltd.*, 346 F. Supp. 3d 389, 405 (S.D.N.Y. 2018) (dismissing disclosure and reporting control claims because "[t]he complaint d[id] nothing to describe [Defendant's] system of internal controls, let alone . . . why that system was inadequate").

And because MLR has failed to properly allege that Mylan's certifications that its disclosure protocols were effective were false or misleading, MLR has not adequately alleged

---

[7] The CIA was "incorporated by reference" in the complaint, and thus can be properly considered when considering Mylan's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).

scienter. "In the securities fraud context," the Second Circuit has "typically found it sufficient to state a claim based on recklessness if the complaint 'specifically allege[s] defendants' knowledge of facts or access to information contradicting their public statements.'" *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 177 (2d Cir. 2015) (alteration in original) (citation omitted). Here, MLR has not sufficiently alleged the existence of facts contradicting Mylan's public statements and has thus failed to properly allege scienter.

Accordingly, MLR's Section 10(b) and 20(a) claims based on Mylan's statements certifying the effectiveness of its disclosure controls and protocols are dismissed.

### 4.      Statements of Regulatory Risk

Mylan argues that MLR's claims regarding the risk that Mylan could be investigated should be dismissed to the extent that they rely on statements in its 2013 Annual Report. (Dkt. No. 31 at 18.) In an earlier opinion in the Class Action, this Court held that these statements could be misleading because a "reasonable investor could have concluded" that "although the government . . . 'could' open an investigation, such unfavorable events had not yet occurred." *In re Mylan N.V. Sec. Litig.*, 2018 WL 1595985, at *10. MLR alleges that these statements were misleading because Mylan failed to disclose that it received a subpoena from the Department of Justice in November 2014. (Compl. ¶ 164.) Because the 2013 Annual Report was published before it received the subpoena, Mylan argues that these claims must be dismissed because they were not misleading or made with the requisite scienter.

MLR has failed to respond to this argument in its opposition. Accordingly, any argument opposing Mylan's position here is waived. *See Kao v. British Airways, PLC*, No. 17 Civ. 232, 2018 WL 501609, at *5 (S.D.N.Y. Jan. 19, 2018) ("Plaintiffs' failure to oppose Defendants' specific argument in a motion to dismiss is deemed waiver of that issue.").

Accordingly, MLR's Section 10(b) and 20(a) claims based on Mylan's statements of regulatory risk are dismissed to the extent that they rely on the 2013 Annual Report.

### B.     Section 18 Claims

#### 1.     Section 18 Statute of Limitations

Mylan also moves to dismiss MLR's Section 18 claims in their entirety. Mylan first argues that MLR's Section 18 claims are time barred. It is undisputed by the parties that the two-year statute of limitations under Section 18 has expired. (Dkt. No. 31 at 19–20; *see* Dkt. No. 34 at 19.) MLR argues, and this Court agrees, that regardless of that fact, the two-year statute of limitations has been tolled under *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974).

*American Pipe* holds that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Id.* at 554. *American Pipe* applies with equal force where, as here, class members choose to assert their claims in an individual action. *See Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 353–54 (1983).

Mylan argues that because a Section 18 claim was not asserted in the Class Action, this new claim is not tolled because it is not "exactly the same cause of action subsequently asserted." *Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 467 (1975). However, subsequent precedent has clarified that the Second Circuit

> do[es] not regard the fact that [a class] action was premised on different legal theories as a reason not to apply *American Pipe* tolling to save the claims of class members. . . . Indeed, limiting *American Pipe* tolling to the identical 'causes of action' asserted in the initial class action would encourage and require absent class members to file protective motions to intervene and assert their new legal theories prior to class certification, thereby producing . . . 'court congestion, wasted paperwork and expense.'

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262, 2015 WL 6243526, at *147 (S.D.N.Y. Oct. 20, 2015) (fourth alteration in original) (quoting *Cullen v. Margiotta*, 811 F.2d 698, 721 (2d Cir. 1987)).  For a plaintiff who wishes to take advantage of *American Pipe* tolling, the legal theory asserted is not the relevant metric.  Rather, "[c]ourts do not . . . permit tolling when a plaintiff raises a new *factual* theory."  *Id.*  A concurrence in *Crown, Cork & Seal Co.* suggests that "the district court should take care to ensure that the suit raises claims that 'concern the same evidence, memories, and witnesses as the subject matter of the original class suit.'"  *Crown, Cork & Seal Co.*, 462 U.S. at 355 (Powell, J., concurring) (quoting *American Pipe*, 414 U.S. 538, 562 (Blackmun, J., concurring)); *see also In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2015 WL 6243526, at *148 ("Defendants cannot plausibly claim prejudice when a class member sues individually on a new legal theory that the class representatives could still sue on in the predicate class action.").

The cases cited by Mylan are inapposite, because they involve plaintiffs attempting to avail themselves of *American Pipe* tolling while asserting claims resting on new *factual* bases.  *See Fir Tree Capital Opportunity Master Fund, L.P. v. Am. Realty Capital Props., Inc.*, No. 17 Civ. 4975, 2017 WL 10808809, at *4 (S.D.N.Y. Dec. 14, 2017) ("Plaintiffs' claim cannot reasonably be understood to fall within the class action definition [because s]ecurity-based swaps . . . are not analogous to the listed securities set forth in the class definition."); *Friedman v. JP Morgan Chase & Co.*, No. 15 Civ. 5899, 2016 WL 2903273, at *9 (S.D.N.Y. May 18, 2016) (noting various factual differences between the individual plaintiffs' allegations and the class allegations, including that they were "never members of the . . . class" and thus could not rely on it for tolling purposes); *In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 995 F. Supp. 2d 291, 303 (S.D.N.Y. 2014) ("[T]here can be no tolling of the . . . statute of

limitations . . . based on the Bear Stearns Swaps because the Class Action did not involve swap claims.").[8]

Because there is no dispute that MLR's Section 18 claims rest on the same facts on which the Class Action rests (*see* Dkt. No. 31 at 1), MLR's Section 18 claims are not time barred.

## 2.    Reliance

To state a claim for a violation of Section 18, a plaintiff must plead "(1) a false or misleading statement was contained in a document filed pursuant to the Exchange Act (or any rule or regulation thereunder); (2) defendant made or caused to be made the false or misleading statement; (3) plaintiff relied on the false statement; and (4) the reliance caused loss to the plaintiff." *In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 995 F. Supp. 2d at 308 (citation omitted).

Mylan argues that MLR has not adequately pleaded reliance. "Unlike Section 10(b)'s relaxed standard for pleading reliance . . . Section 18 requires that plaintiffs allege actual reliance on specific statements in covered Exchange Act filings." *In re Marsh & Mclennan Cos., Inc. Sec. Litig.*, 501 F. Supp. 2d 452, 493 (S.D.N.Y. 2006). Here, MLR has alleged:

> [A] Greenlight investment analyst actually and justifiably read, reviewed and relied upon . . . [enumerated Mylan SEC filings which] include[ed] . . . (a) statements concerning the basis for Mylan's financial statements; (b) statements about the amount of rebates that Mylan was paying to Medicaid; (c) statements about the risk of errors in classifying drugs under the MDRP; (d) statements concerning the potential regulatory scrutiny to which Mylan was subject; (e) statements concerning the competitiveness of the market for the EpiPen; and (f) statements and certifications that Mylan had effective internal controls over disclosure controls and procedures. . . . Greenlight actually and justifiably relied upon [this information] in making each purchase set forth in Exhibits A through F on behalf of the Assignors.

---

[8] The portion of the *Bear Stearns* opinion dealing with Section 18 chiefly discusses the statute of repose, rather than the statute of limitations. *See In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 995 F. Supp. 2d at 308. However, even if an implicit discussion of the statute of limitations can be inferred, the weight of the case law tends in favor of tolling MLR's claims.

(Compl. ¶¶ 201–202; *see* Dkt. Nos. 1-1 to 1-6.)  These allegations are sufficient to allege actual reliance to state a claim under Section 18.  "[C]ourts in this Circuit have without hesitation applied Rule 9(b)'s heightened pleading requirements to Section 18 claims."  *In re Alstom*, 406 F. Supp. 2d 433, 483 n.45 (S.D.N.Y. 2005).  And in the Section 9(b) context, substantively similar allegations have been upheld as "sufficient to plead actual reliance with particularity." *Fir Tree Capital Opportunity Master Fund, L.P.*, 2017 WL 10808809, at *5 ("Plaintiffs . . . identify specific transactions, set forth in exhibits, and specific reports and statements within those reports on which plaintiffs claim to have relied.").

Accordingly, MLR has sufficiently pleaded actual reliance such that its Section 18 claims survive.

### C.      Claims against Defendant Rajiv Malik

Mylan moves to dismiss all claims against Defendant Rajiv Malik on the basis that MLR has not adequately pleaded scienter to establish Malik's primary liability for any misstatements regarding EpiPen products.  (Dkt. No. 31 at 23–25.)  This Court has already determined in the Class Action that substantively similar allegations could not establish Malik's liability.  *In re Mylan N.V. Sec. Litig.*, 379 F. Supp. 3d at 213–214 & 213 n.8.  Plaintiff acknowledges that this Court has already decided this issue and does not oppose Defendant's motion to dismiss all claims against Malik.  (Dkt. No. 34 at 18 n.4.)

Accordingly, all claims against Defendant Rajiv Malik are dismissed.

## IV.    Conclusion

For the foregoing reasons, Defendants' motion to partially dismiss the complaint is GRANTED in part and DENIED in part.  Plaintiff may file an amended complaint consistent

with this opinion on or before April 20, 2020.  If Plaintiff fails to do so, Defendants shall file an

answer to all remaining claims on or before May 4, 2020.

The Clerk of Court is directed to close the motion at Docket Number 30 and terminate

Defendant Rajiv Malik as a party to this action.

SO ORDERED.

Dated: March 30, 2020
       New York, New York

_____
                J. PAUL OETKEN
          United States District Judge